10 N.J. Super. 393 (1950)
76 A.2d 843
IN THE MATTER OF THE APPLICATION OF MICHAEL MACEJKA FOR WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Mercer County Court Law Division.
Decided November 13, 1950.
*395 Mr. Earl T. Milsop, for the petitioner.
Mr. Theodore D. Parsons, Attorney General of New Jersey, by Mr. Eugene T. Urbaniak, Deputy Attorney General, for the State.
HUGHES, J.C.C.
On the representation that he is illegally confined in the New Jersey State Prison, petitioner was granted the writ of habeas corpus under the authority of R.S. 2:82-1 et seq. The petition for the writ, the return thereto and stipulations entered into at the hearing on the writ, establish that on May 1, 1936, petitioner, having been sentenced by a court of jurisdiction in the County of Bergen to serve not less than 12 nor more than 15 years in the State Prison on conviction of the crime of robbery, was received in the prison and entered upon the service of such sentence; that by action of the Board of Managers of such prison taken under the authority of R.S. 30:4-106.1 (repealed P.L. 1948, c. 84, effective May 28, 1948), petitioner was paroled on such sentence on September 13, 1944; that on the date of such parole there remained unserved against such sentence a net total of two years, seven months and four days, after application of all of the uniform commutation time credits to which he was then entitled on the maximum of such sentence (R.S. 30:4-140); that one of the conditions of such parole, accepted by petitioner on the granting thereof, was the following:
"If you are returned to prison by revocation of parole, the time between your release and your return to prison, will not be taken into consideration as a part of your sentence, and you will be required to serve the maximum sentence that was imposed upon you."
It further appeared that petitioner, on May 7, 1945, during the time he was at large and prior to expiration of the maximum term of the parole (R.S. 30:4-106.1, repealed P.L. 1948, c. 84), was convicted in Morris County of another crime and sentenced to serve not less than three nor more than *396 seven years in the State Prison; and that on June 1, 1945, also within the maximum term of such parole, he was sentenced in Essex County on conviction of another offense, to serve not less than three nor more than seven years in the State Prison, such term being ordered to run concurrently (but not retroactively to any extent) with the Morris County sentence referred to; that, accordingly, and in legal effect, the petitioner commenced service of such concurrent terms on June 1, 1945; that as a result of such convictions of crime within the maximum term of his parole, such parole was revoked by said Board of Managers on June 12, 1945.
The return to the writ filed by the State establishes that upon expiration of the concurrent Essex County and Morris County sentences, the petitioner was "reverted" and continued in confinement to serve the unexpired portion of the Bergen County sentence on which he had been paroled, and such is advanced as the justification for his present detention.
On the basis of the above, petitioner makes three contentions, which may be summarized as follows:
(1) That upon his receipt in prison on the sentences imposed upon him in 1945, he was classified as a multiple offender (R.S. 2:103-9, amended P.L. 1950, c. 315) and was not permitted to earn commutation time (R.S. 30:4-140, supra) on his second and third sentences, and was required to serve such commutation time earned by him on his first sentence.
By reason of the amendment of R.S. 2:103-9 and existing decisions on the subject of these sanctions against multiple offenders, not charged and convicted as such in the trial court (In re Breslin, 9 N.J. Super. 356 (Mercer County Court, Law Division, 1950), this point is now academic; all such time credits have been restored to the petitioner and this ground for relief is withdrawn. Upon the adjustment of his prison records to account for all such time so restored, and it appearing that no parole intervened as to these latter sentences, there is yielded the adjusted date on which petitioner completed service of the maximum terms of the concurrent *397 sentences imposed upon him, i.e., February 23, 1950, which also marks the date of his "reverting" to complete service of the time remaining to be served on the maximum of the Bergen County sentence, on which he had been paroled and which parole was revoked, as stated.
(2) The next ground urged by petitioner involves a point on which there is some varying authority in the jurisdictions of this country. It has been noted that when petitioner was paroled on September 13, 1944, there remained unserved against the maximum term of his sentence a total of more than two years. The sanction to be imposed upon any revocation of such parole due to subsequent conviction of crime was that such violator would be required to serve the maximum term of the sentence originally imposed upon him. Petitioner contends, however, that since the revocation was brought about by subsequent conviction of crime, and since he was for such crimes sentenced to be imprisoned for minimum-maximum terms, and since the latter sentences did not specify that they would run consecutively to the unexpired term that he was bound to serve as a parole violator, that such terms of imprisonment ran concurrently with such unexpired term and, hence, that by his service of the latter sentences, on which he was confined from June 1, 1945, to February 23, 1950, he served during the same interval the unexpired portion of the original sentence on which he had been paroled. The petitioner cites, inter alia, the case of Wright v. Youell, 160 Va. 925, 168 S.E. 339 (Sup. Ct. of App. 1933), 24 C.J.S., § 1996 (d), as authority for the view that upon revocation of parole upon subsequent conviction of crime, followed by imprisonment for such crime, the time due on the sentence from which the violator had been paroled runs concurrently with the imprisonment on the current sentence, where the second sentence fails to specify that it shall run consecutively thereto. The Wright case must be distinguished because there was there involved a conditional pardon by the sovereignty, having as its principal condition that if the grantee were again to be convicted of crime, the pardon would be null and void. *398 Upon the voiding of the pardon for such cause, the grantee being in custody, the unserved portion of the sentence on which he had been pardoned commenced to run, and in the absence of a direction to the contrary in the second sentence, that, too, commenced then to run. The petitioner likens this authority to the situation which existed in New Jersey in 1945, at which time there was admittedly no statute existing requiring him to serve the two sentences consecutively. It may be noted parenthetically that presently P.L. 1948, c. 84, specifically denies to a parolee the right to serve a sentence for a subsequent crime and the penalty for parole violation concurrently. It is contended on behalf of petitioner that such statute is not in any sense declarative of existing law.
It must be noted, however, that petitioner had accepted as a condition of his parole the provision above set forth, which, in case of revocation, would require him to serve the remaining maximum term of his sentence, and stipulated that "* * * the time between your release and your return to prison will not be taken into consideration as a part of your sentence * * *." The paroling authority was authorized to impose this condition (R.S. 30:4-108) and such condition was undoubtedly valid and binding on acceptance by the intending grantee of the parole. 46 C.J., § 1207, par. 73.
By force of the condition, when petitioner committed a crime while on parole, for which he was arrested, convicted, sentenced and imprisoned, not only was his parole violated, but service of his original sentence was interrupted and suspended. From that point forward his imprisonment was attributable to his latter sentences only; he was not then in actual or constructive custody under the original sentence and this status existed until the expiration of such latter sentences. This time being served on the latter sentences cannot be credited to the unexpired maximum of the original sentence without doing violence to the plain intent and purpose of our statutes providing for the system of parole, and the valid rules, regulations and conditions, including the instant one, made effective by the paroling authority.
*399 Petitioner relies, however, upon the wording of the condition, "* * * the time between your release and your return to prison, will not be taken into consideration as a part of your sentence * * *," and contends that the unexpired portion of his first sentence commenced to run on his "return to prison," i.e., upon his imprisonment on the concurrent sentences imposed in 1945. It seems clear to me, however, that this language does not mean that a parole violator's original unexpired sentence shall begin to run from the date he is imprisoned for a new and separate offense, but can only refer to re-imprisonment on the original sentence under the revocation order of the paroling authority. And while the petitioner was declared delinquent and his parole was revoked on June 12, 1945, the sanction flowing therefrom, namely, the required service of the unexpired term of the original sentence, was effective only on the expiration of the latter sentences on February 23, 1950, on which date the unexpired term of the original sentence began to run. Language essentially comparable to that of the instant condition contained in provisions of the parole law applicable to federal prisoners (18 U.S.C.A., c. 22, § 723 (c), repealed by Act of June 25, 1948, c. 645, § 21, 62 Stat. 862, effective September 1, 1948; 18 U.S.C.A., § 4205) has been construed to mean re-imprisonment on the original sentence under order of the paroling authority. Zerbst, Warden, &c., v. Sherman Kidwell, 304 U.S. 359, 82 L.Ed. 1399 (1937).
As held in this case, the proper working of the parole system requires that the Board have authority to discipline, guide and control parole violators whose sentences have not been completed. Parole is intended in its proper concept, as reflected in our Constitution and laws on the subject, to be a means of restoring offenders who are good social risks to society and to afford to a prisoner deemed fit to return to community living another opportunity. Unless a parole violator, however, can be required to serve some time in prison in addition to that imposed for an offense committed while on parole, he not only escapes punishment by being required *400 to serve the unexpired portion of his original sentence, but the disciplinary power of the paroling authority would be practically nullified. The parole grantee's contract with the State, as represented by its paroling authority, would be meaningless, unless by entering into it he is held to accept full responsibility for his later default. Indeed, if the condition accepted by this petitioner does not require him to serve some time in addition to a sentence imposed for the later offense, the paroling authority has no control over his conduct and he might well be inclined to gamble upon the committing of an offense whose statutory maximum is less than the unserved original term which he contemplates he would have to serve upon revocation of parole. Commission of crime is only one of the parole conditions, the breach of which may lead to revocation of parole, and it would be inconceivable that a violator who commits crime leading to revocation of parole would be in a more favored position than a violator who is declared delinquent for lesser reasons. Punitive control by the paroling authority, under any parole system, is essential to provide the necessary safeguards for the benefit of society. Cong. Rec., Vol. 45, p. 6377. If the parole laws, including the valid condition accepted by this petitioner, were to be construed as he contends, parole might be more reluctantly granted, contrary to the broad, humane purpose of our Legislature in granting relief from imprisonment to those deserving another chance. Accordingly, I determine that the unexpired portion of the original sentence of the petitioner began to run on February 23, 1950, and has not yet expired, and that he is not entitled to discharge from it on the ground advanced by him.
(3) The third point made by this petitioner involves, again, his former classification as a multiple offender, as bearing upon his failure to be paroled pursuant to an application made by him to said Board of Managers in 1947. The statute which formerly dealt with the parole of State Prison inmates imposed certain limitations upon the granting of parole to multiple offenders (R.S. 30:4-106.2) and essentially similar *401 provisions exist in the new Parole Law (R.S. 30:4-123.12, effective May 28, 1948). The petitioner contends that under the former statute, he was denied parole as ineligible therefor on the ground that at the time of his application in 1947, his eligibility date as a third offender would not have been reached until he had served at least three-quarters of the maximum terms of the sentences then being served, i.e., the seven-year maximum terms above referred to. He contends that the denial of consideration for parole was wrongful because although classified administratively by the prison authorities as a third offender, he had not been indicted nor convicted as such in the trial courts. He thus invokes the rule laid down in State v. Lutz, 135 N.J.L. 603 (Sup. Ct. 1947):
"There is an aggravation of guilt in the repetition of criminal conduct that warrants the imposition of a heavier penalty when the male-factor is again convicted, if the legislative authority so wills; but it is essential to due process that there be an allegation in the indictment of the previous convictions upon which the enhancement of the punishment depends, and proof thereof upon the trial, or that there be a subsequent proceeding in which shall be determined the identity and status of the prisoner in this regard, and his liability to the increased penalty. Where a repetition of criminal action renders the accused liable to different and greater punishment, the subsequent offense is treated as a first offense, unless the earlier crimes are specified in the indictment and proved on the trial. State v. Garton, 102 N.J.L. 318; Weeks v. State, 101 Id. 15; Graham v. West Virginia, 224 U.S. 616; 32 S.Ct. 583; 56 L.Ed. 917. The procedure must accord with the convict's fundamental right to be heard on notice as to his liability to the heavier penalty which may be inflicted only upon persistent offenders of the statutory category. Pennsylvania, ex rel. Sullivan v. Ashe, 302 U.S. 51; 58 S.Ct. 59; 82 L.Ed. 43. The usual practice is to allege the prior convictions in the indictment, and to submit the factual issue thereby arising to the jury; and this course is obligatory save where the statute makes other adequate provision for the inquiry, which is not the case here. The procedure has its roots in the fundamental common-law principle that in penal proceedings the accused shall be clearly informed of the charge which he is called upon to meet; and this of necessity includes a specification of the elements of aggravation which under the statute enlarges the grade of the crime by enhancing the punishment. People v. Sickles, 156 N.Y. 541; 51 N.E. Rep. 288; People v. Rosen, 208 N.Y. 169; 101 N.E. Rep. 855."
*402 On the authority of this case, it has been held that deprivation of commutation time credits, uniformly provided by statute as an incentive for good conduct and work performance (R.S. 30:4-140, supra), on the basis of an administrative classification as a multiple offender (R.S. 2:103-8, repealed P.L. 1950, c. 315; R.S. 2:103-9, as amended P.L. 1950, c. 315) is illegal as depriving the prisoner so punished of his fundamental right to be heard on notice as to his liability to lose such commutation time otherwise earned. In re Breslin, supra.
In the instant case, however, the petitioner not having been paroled, for whatever reason, he must be considered to have served the maximum of the concurrent sentences imposed upon him, such service having expired on February 23, 1950. There is no power in this court to grant parole, nor to declare, retroactively, the occurrence of an automatic parole at the time when a prisoner may have become eligible for consideration therefor, despite the fact that such failure of consideration may have been wrongful. Ex parte Fitzpatrick, 9 N.L. Super. 511, 75 A.2d 636 (Cty. Ct. 1950).
For the above reasons, it seems clear to me that the petitioner is presently serving the unexpired term of his sentence from Bergen County due to revocation of his parole therefrom; that he is properly detained to complete service thereof, unless and until re-paroled by the Board; and that he is, therefore, not entitled to immediate release.
The writ is discharged and the petitioner remanded to custody.