ERNEST DeSANTO, PETITIONER, v. NEW JERSEY STATE PAROLE BOARD, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Decided December 21, 1951.

Before Judges JACOBS, EASTWOOD and BIGELOW.

*Mr. Ernest DeSanto, pro se,* for the petitioner.

*Mr. Theodore D. Parsons,* Attorney-General of New Jersey (*Mr. Eugene T. Urbaniak,* Deputy Attorney-General, appearing), attorney for the respondent.

The opinion of the court was delivered

PER CURIAM. The petitioner, a prisoner presently confined in the New Jersey State Prison, seeks under *Rule* 3:81–10 to review the validity of an administrative rule promulgated on November 14, 1950, by the New Jersey State Parole Board.

Although the petition attacks the recent holding in *In re Fitzpatrick,* 9 *N. J. Super.* 511 (*Cty. Ct.* 1950), affirmed 14 *N. J. Super.* 213 (*App. Div.* 1951) we accept the principles there set forth as controlling. In that matter Fitzpatrick had been sentenced in 1945 to a term of not less than 4 and not more than 7 years and to a consecutive term of not less than 3 and not more than 5 years. The prison authorities had aggregated his sentences to reflect a combined minimum of 7 years and maximum of 12 years; under this procedure he would first become eligible, apart from commutation and work credits, for parole consideration at the expiration of the combined minimum and if paroled could be subjected to parole supervision until the expiration of the combined maximum. He advanced the contention that the aggregation of his sentences was improper; that he was entitled to parole consideration on his first sentence at the expiration of its minimum; and that if parole had then been granted he would have had the dual status of a parolee on his first sentence and a prisoner serving time on his second. With this contention the court agreed. He advanced the further contention that since he had not been duly granted parole consideration he was entitled to an automatic parole at the expiration of his minimum sentence. With this contention the court disagreed pointing out that the grant or denial of parole rests within the proper judgment of the parole author-

ity and is in no sense a judicial function. Accordingly, the County Court denied his application for relief; in affirming the Appellate Division expressed the assumption that the Parole Board would "grant relief from any manifest injustice so far as it is within its power, and if enabling legislation is necessary, that the Executive Department will seek the enactment of such legislation."

Under the decision in *Fitzpatrick's* case and pending corrective action by rule of the Parole Board or by legislation (*cf. R. S.* 30:4–123.10) the board could no longer aggregate his minimum sentences but would be required, there having been no parole, to consider, apart from commutation and work credits, the time already served in prison as applicable to the maximum on the first sentence and the balance towards the second sentence and when the minimum on his second sentence arrived he would be entitled to parole consideration. This result would unfairly defer the date upon which he could receive parole consideration and be eligible for release from confinement on parole. The most effective way of dealing with the matter would have been for the board to consider whether parole should be granted retroactively with like effect as if granted at the expiration of the first minimum sentence. However, the board declined to consider the granting of retroactive parole because of its supposed lack of power to do so. We believe that it has such authority. *R. S.* 30:4–123.6 expressly empowers the Board "to promulgate reasonable rules and regulations which shall establish the general conditions under which parole shall be granted and revoked and shall have authority to adopt special rules to govern particular cases." The legislative terminology is designedly comprehensive and consistent with the prevailing philosophy of affording wide discretionary powers to the paroling authority. The board is vested with power to adopt rules to govern particular cases and, in the light of the compelling situation presented by the court's opinion in *Fitzpatrick's* case and the suggestion therein, the adoption of a rule pursuant to which the board would consider whether to grant a parole

retroactively would appear to be in the interests of justice and within the legislative delegation.

However, on November 14, 1950, the board did promulgate the following rule:

"Whenever it shall appear to the satisfaction of the Parole Board that an eligibility date for a prisoner has not yet been fixed for purposes of parole consideration on one or more of a series of consecutive sentences imposed upon him because the minima and maxima of said sentences have been combined to produce a single sentence with a 'lumped' minimum and maximum, and by reason thereof said prisoner has not received parole eligibility consideration to which he may have been entitled by law on such sentences, and whenever it shall appear that any inequities may have arisen as a result of such practice, and in order to adjust any such inequities, the Board shall give special consideration to such prisoners in the manner set forth herein.

Provided that the prisoner, by a parole agreement in writing, shall accept and agree to the action of the Parole Board, and all conditions attached to such parole, including a provision that supervision on parole shall extend until the expiration of the aggregate of the maxima on all sentences, on a combined basis, less proper credits in reduction thereof, the Parole Board, in its discretion, may release any such prisoner on parole, when eligible, computed on the aggregate minima and maxima of all of his combined sentences, subject to limitations imposed by law respecting eligibility for consideration for release on parole."

██ In the instant matter the petitioner was received at New Jersey State Prison in 1942 on eight convictions. He was sentenced to a minimum of 1 year and maximum of 3 years on each conviction, the sentences to run consecutively. His sentences were improperly aggregated to provide for a combined minimum of 8 years and a combined maximum of 24 years. His situation falls directly within *Fitzpatrick's* case. Under the rule of November 14, 1950, he has received the advantage of being considered for parole although in August, 1951, the board denied parole and re-scheduled his case for further consideration in May, 1952. Consequently, no occasion has thus far arisen for his consent to parole conditions. Under the circumstances and passing other procedural points which may be raised under *Rule 3:81–10*, we are satisfied that the petitioner has no sufficient legal interest to

attack the rule of the State Parole Board. *Cf. Como Farms, Inc., v. Foran,* 6 *N. J. Super.* 306, 317 (*App. Div.* 1950); *Borchard, Declaratory Judgments* (2d ed. 1941), *p.* 50. We assume, nevertheless, that in accordance with its authority hereinbefore expressed, the board will give early consideration to the adoption of an appropriate rule relating to retroactive parole and applicable to prisoners whose sentences had been improperly aggregated as in *Fitzpatrick's* case.

The petition is **dismissed.**