34 N.J. Super. 181 (1955)
111 A.2d 910
IN THE MATTER OF THE APPLICATION OF FRED CLOVER FOR A WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1955.
Decided February 24, 1955.
*183 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Daniel Leff argued the cause for the petitioner.
Mr. George K. Meier, Assistant Prosecutor, argued the cause for the respondent (Mr. Charles V. Webb, Jr., Essex County Prosecutor and attorney).
*184 The opinion of the court was delivered by FRANCIS, J.A.D.
A writ of habeas corpus granted to appellant, who is confined in New Jersey State Prison, was discharged after hearing. On this appeal he contends that prior to the date of revocation of his license to be at liberty he had served all of the time in confinement and on parole which could be exacted of him on the particular sentences which are involved in this proceeding.
On November 23, 1933 Clover was given seven consecutive sentences, five of them three to seven years and two of them two to three years in New Jersey State Prison. When he was received at the institution the authorities aggregated or lumped his sentences so as to reflect a total sentence of 19 to 39 years. Our computation on this basis is 19 to 41 years. However, the lower maximum figure is set forth in the statement of the Parole Board which appears as part of the record of these proceedings. Which figure is correct is not a matter for determination on this appeal. Such uniting of sentences was then illegal and beyond any authority possessed by the prison managers or the Court of Pardons. In re Domako, 9 N.J. 443 (1952); In re Fitzpatrick, 9 N.J. Super. 511 (Cty. Ct. 1950), affirmed 14 N.J. Super. 213 (App. Div. 1951); Cf. N.J.S.A. 30:4-123.10, L. 1950, c. 292, p. 989.
On December 22, 1945, after 12 years of imprisonment, Clover was granted a "License to be at Liberty" by the Court of Pardons, in which such authority resided. R.S. 2:198-1 (repealed L. 1949, c. 18, § 6). At this time, according to the statement referred to, he had served his minimum sentence "computed on an aggregated basis."
The certified copy of the license to be at liberty appearing in the appendix bears the notation that the maximum period of parole would expire on June 28, 1956. Certain conditions regulating the conduct of Clover during the ensuing period were attached to the license. One specific provision appearing therein was that upon revocation of the parole "street *185 time," the time between the release from prison and his return, would not be credited on his sentence. This was in accordance with the then pertinent statute, R.S. 2:198-4.
On January 26, 1952, while at liberty, Clover violated N.J.S. 2A:151-8 of the Crimes Act. A complaint was filed thereon on January 30, 1952 and he pleaded not guilty on June 9, 1952. However, on July 2, 1952 this plea was retracted and one of non vult entered, following which on July 16, 1952 he was sentenced to one to two years in State Prison.
On April 25, 1952, which was prior to the conviction referred to, the license to be at liberty was revoked because of violation of the "terms, conditions or limitations" thereof. N.J.S. 2A:167-10. Presumably the revocation resulted from Clover's arrest on the charge of which he was later convicted. The maximum term under the one to two year sentence was completed on October 19, 1953 and he was "reverted" to his status as a prisoner serving the sentences on which he had been given his license to be at large.
A license to be at liberty issued by the now extinct Court of Pardons is different from a parole granted under the present Parole Act, N.J.S.A. 30:4-123.1, et seq. The provisions of N.J.S.A. 30:4-123.24, L. 1948, c. 84, p. 488, denying street time credit when a parole is revoked for subsequent conviction of crime and allowing such credit where the revocation is for other reasons, do not apply to such licenses. In re Kneipher, 12 N.J. Super. 407 (Cty. Ct. 1951); N.J.S. 2A:167-8 (formerly N.J.S.A. 2:196A-10). They remained subject to the terms and conditions made a part thereof, until July 25, 1953 (L. 1953, c. 275, p. 1805: N.J.S. 2A:167-12), when by amendment the same rules with respect to street time credit upon revocation of parole were made applicable to such licenses.
As set forth above, Clover's license to be at liberty was withdrawn on April 25, 1952. This was prior to his conviction and consequently could not have been produced by it. However, the withdrawal was also prior to the 1953 *186 amendment and since this legislative change does not contain language demonstrating retroactive application to previously revoked licenses, it cannot be said that the time spent at large can be applied in diminution of the remainder of the term or terms to be served.
These considerations undoubtedly led to the determination of the Parole Board that appellant should not have his six years at liberty deducted from his remaining maximum sentences. Consequently, he was advised that the expiration date of his maximum sentences is April 16, 1964, although it seems apparent from the statement of the Board that he will be given consideration for parole at certain intervals, the next such hearing being scheduled for January 1956.
Appellant's position on this appeal is that since the lumping of his sentences was invalid, he was entitled to parole consideration upon the service of the minimum of his first consecutive sentence; further that he should have had the same consideration thereafter on service of the minimum of each successive sentence. And he maintains that when the license to be at liberty was granted in 1945 it was in legal effect a retroactive parole as of the end of the service of each minimum sentence.
The significance of the argument is that upon the service of the minimum of the first sentence he was in effect paroled and began to serve the minimum of the next consecutive sentence while at the same time serving out the parole term under the first sentence. So he claims that by such progression he was working out the prison terms and parole periods at the same time.
Support for the argument is said to be found in the form of license granted. More specifically, our attention is called to the references therein to the remaining unserved "sentence." From this the conclusion is drawn that the Court of Pardons must have considered that the minimums of all of the consecutive sentences had been completed and that only the difference between the minimum and maximum of one sentence remained unserved. Therefore, it is urged that *187 even if the longest maximum of any of the original sentences, namely, seven years, were taken as the remaining unserved time, the longest possible parole period would be four years, and since Clover was at large for six years before the asserted violation of the license conditions, the power of revocation no longer existed.
Aside from the difficulties of computation associated with the contention, we find no evidence that the Court of Pardons intended a retroactive parole when the license was granted in 1945. The document itself furnishes no evidence of such an intention. In fact, the notation thereon of June 28, 1956 as the expiration date leads to the contrary view. The use of the singular "sentence" of itself has no such significance in the context or otherwise as we are asked to find. The license is a printed form of which the word "sentence" is a normal part. At one place the licensee is told that while he is at liberty he will receive the same commutation allowance on his uncompleted "sentence" as would be granted if he were still imprisoned; at another, he is advised in substance that misbehavior, though not serious enough to warrant cancellation of his liberty, may prolong his parole supervision until the expiration of his full "sentence." In these connections "sentence" clearly relates to the total maximum imprisonment period or periods originally imposed by the court.
Even though the aggregating of the original sentences was illegal, the courts have no authority to order a parole now. Nor can we declare that a retroactive license to be at liberty was granted in 1945 in the absence of evidence demonstrating such fact, or that as a matter of law Clover was automatically paroled at the end of each successive minimum term of his sentence. The grant or denial of a parole is committed to the discretion of the Parole Board and is in no sense a judicial function. In re Domako, supra, 9 N.J. 443 (1952); Manda v. State, 28 N.J. Super. 259 (App. Div. 1953); In re Macejka, 10 N.J. Super. 393 (Cty. *188 Ct. 1950); In re Fitzpatrick, supra, 9 N.J. Super. 511 (Cty. Ct. 1950), affirmed 14 N.J. Super. 213 (App. Div. 1951); Dressler, Probation and Parole, 66 (1951).
The Court of Pardons had the power to allow a retroactive license to be at large where consecutive sentences had been illegally lumped, and the Parole Board now has the same power with respect to parole. In re Domako, supra; In re Fitzpatrick, supra.
If the circumstances established the awarding of a retroactive license to be at liberty, on the record before us we could not say that the effect thereof was to have Clover serving parole time and prison time on each consecutive sentence after completion of the first minimum. No present rule of the Board dealing with the modus operandi of a retroactive license or parole has been exhibited. Cf. De Santo v. New Jersey State Parole Board, 17 N.J. Super. 44 (App. Div. 1951). In any event, the service of parole time and prison time concurrently seems incompatible with ordinary concepts of these statuses. Parole is a procedure by which a prisoner is allowed to serve the final portion of his sentence outside the gates of the institution on certain terms and conditions, in order to prepare him for his eventual return to society. In re Fitzpatrick, supra, 9 N.J. Super., at page 520; 39 Am. Jur., Pardon, Reprieve and Amnesty, § 11, p. 525.
It may be that in treating with a series of consecutive sentences which were imposed prior to the 1950 statute, supra (N.J.S.A. 30:4-123.10), which permits lumping thereof with the consent of the prisoner, the Board would and does grant parole at the expiration of the minimum of each sentence so as to start him on the service of his next successive minimum term, each such parole to be served consecutively and to be effective upon the termination of service of the minimum of the last consecutive sentence. If so, on actual release the prisoner would serve a series of parole terms in sequence, which would be consistent with the trial judge's imposition of consecutive sentences.
*189 But the mechanics of retroactive paroles is a matter for the administrative discretion of the Board and no actual problem arising therefrom is before us at this time.
It has been suggested that in any event Clover received inequitable treatment because of the illegal combining of his sentences and because of the 1948 amendment to the Parole Act, supra (N.J.S.A. 30:4-123.24), which gives credit for street time to parolees as distinguished from those holding licenses to be at large, where the parole is revoked for reasons other than conviction of crime. Finally, the point is made that the Legislature in 1953 (N.J.S. 2A:167-12) recognized that under the 1947 Constitution and the implementing Parole Act, parole is the successor to the former license to be at liberty and that from a practical standpoint there is no real difference between the two. Consequently, as of July 25, 1953 (L. 1953, c. 275, p. 1805) section 12 of the act concerning licenses to be at large was amended to confer on such licensees the same advantages as parolees with respect to time spent at liberty. Even though, as already set forth, the amendment is not retroactive so as to relate to Clover's license revocation which occurred 15 months earlier, the complaint is that under all the circumstances he should not be deprived of his six years of street time.
Resolution of these problems relating to equitable treatment rests with the Board and we do not express an opinion with respect to any of them. It is assumed that such matters will be dealt with justly in the experienced hands of the Board.
The only justiciable issue presented to us is whether a retroactive license to be at liberty was granted to Clover on December 22, 1945 and whether by reason thereof he had served the full time that could be exacted of him on parole before the license was revoked. As to this his contention is not sustainable.
The dismissal of the writ by the trial court is affirmed.