43 N.J. Super. 406 (1957)
128 A.2d 871
STATE OF NEW JERSEY, RESPONDENT,
v.
WILLIAM VAN DORN, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 1957.
Decided January 25, 1957.
*408 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Eugene T. Urbaniak, Deputy Attorney-General, argued the cause for respondent State of New Jersey (Mr. Grover C. Richman, Jr., Attorney-General).
Mr. John J. Gibbons argued the cause for the appellant.
The opinion of the court was delivered by FRANCIS, J.A.D.
William Van Dorn was returned to State Prison on January 27, 1956 as a parole violator to complete the maximum terms of imprisonment imposed on him in 1939. He seeks to be discharged from custody alleging that under the circumstances of his case the license to be at liberty granted to him in 1947 absolved him from any further obligation with respect to service of his consecutive sentences totaling 18 to 27 years.
Van Dorn was serving the long sentence mentioned and on June 25, 1946 he was granted a license to be at *409 liberty (the counterpart of the present parole) by the former Court of Pardons. The license was subject to a number of conditions printed on the reverse side thereof which he was required to agree to and to signify the consent by his signature. Ample authority existed for the imposition of these stipulations and, of course, upon acceptance they became binding. R.S. 2:198-1 (repealed, L. 1949, c. 18, § 6); R.S. 2:196A-10; In re Macejka, 10 N.J. Super. 393, 398 (Cty. Ct. 1950). The license was not signed until May 26, 1947, on which day the parole period began. As of that time, the termination date of his maximum sentence was May 8, 1956, almost nine years later.
It seems to be conceded that when the New Jersey offenses were committed, Van Dorn was on parole in New York; also that he had committed another offense in that state before coming here, for which he had not been apprehended. However, while the sentences were being served in New Jersey, a detainer was lodged with the prison authorities by the State of New York in connection with the crime for which he had not been tried. Upon the same day as the acceptance of the license to be at liberty, he signed a waiver of extradition and consented to be extradited to New York to face that charge and an order was signed by the Mercer County Court directing his delivery to an agent of that state.
The contention is now advanced that no authority existed in the Court of Pardons to grant a license to be at liberty in order to deliver Van Dorn immediately to another jurisdiction for trial. Therefore it is said that the effect of doing so was to relinquish jurisdiction over him and to release him absolutely from any obligation with regard to the unserved maximum of the New Jersey sentences. Manifestly the position is unsound. When a sufficient period of prison time had elapsed in our State to justify the issuance of a liberty license, it was done under authority of the statute. R.S. 2:198-1. As already indicated, the terms and conditions thereof were not accepted by him until May 26, 1947, inferably at least because of his knowledge of the New York detainer. Upon being delivered by consent for trial there, *410 his street time on parole for the New Jersey sentences began to run subject to the conditions of the license and R.S. 2:198-1 et seq. (and upon repeal, L. 1949, supra, subject to R.S. 2:196A-10, 11). Our State did not know then whether he would be released on bail or the complaint dismissed, or even if he would be acquitted of the charge. We find nothing to indicate that the course pursued was legally unsound. On the contrary, it was in his interest to give him the license. If he had not accepted it and remained in prison until his full maximum sentence had been served, the New York detainer and extradition proceeding would have been awaiting him at that time.
After returning to New York, he was convicted on the pending accusation of third degree burglary and given a suspended sentence. However, he was returned to Elmira Penitentiary for violation of the earlier parole of that state. He remained confined until December 4, 1950, when he was again paroled under the dual supervision of New York and New Jersey.
On May 21, 1951, recommitment to Attica Penitentiary followed revocation of the New York parole. New Jersey then cancelled its license to be at liberty on September 18, 1951. In the computation of the adjusted expiration date of the maximum of the New Jersey sentence (to be discussed hereinafter) the Parole Board has given credit for street time from May 26, 1947 to September 18, 1951. That allowance is not questioned specifically and we do not pass upon it. In re Clover, 34 N.J. Super. 181 (App. Div. 1955).
Parole freedom was sanctioned again on June 11, 1953. New Jersey was not notified thereof until July 21, 1953, but granted a parole certificate No. 3363 (as distinguished from a license to be at liberty), N.J.S.A. 30:4-123.1 et seq., retroactive to that date. On November 30, 1954 Van Dorn absconded from the New York parole and as of that day was declared delinquent by our Parole Board. On apprehension, he was returned to Attica on December 31, 1954. This resulted in revocation of the parole of this State on February 9, 1955.
*411 Finally, on January 27, 1956, apparently upon the completion of his term in Attica, Van Dorn was freed. But, New Jersey having filed a detainer, he was delivered to the authorities of this State and returned to State Prison to serve the unexpired maximum of his sentences as adjusted because of his various parole violations.
We have already indicated agreement with the view of the Parole Board that the 1947 license to be at large did not constitute an unqualified discharge from his unsatisfied penal sentences. The prisoner's reply brief challenges the computation of the adjusted maximum expiration date of his sentences. The board maintains that under N.J.S. 2A:167-12 (as it stood in 1951), he cannot have credit on the first period of imprisonment in New York for parole violation, from September 18, 1951 (the date of revocation of the New Jersey license to be at liberty) to June 11, 1953, namely, 631 days.
The statute referred to, supra, manifestly is applicable. It provided:
"No part of a sentence imposed upon a convict, concerning which a license * * * has been granted and revoked, shall be deemed to be served by such person while he or she is serving a sentence for an offense other than the one for which he or she was released under such license * * *."
Accordingly, we agree that the 631-day period cannot be used in diminution of the time owed on the New Jersey sentences.
The board claims also that no credit can be given from the date on which Van Dorn was declared delinquent by it on the second parole violation, namely, November 30, 1954, to January 26, 1956, when he was released from Attica and delivered to the New Jersey authorities  a period of 422 days. For this position, reliance is placed on N.J.S.A. 30:4-123.23 and 24.
N.J.S.A. 30:4-123.23 says:
"Whenever it shall appear to the satisfaction of the board that a paroled prisoner has violated the terms, conditions and limitations *412 annexed to his parole and has given evidence by his conduct that he is unfit to be further at liberty * * * then the board shall have power to declare him delinquent and to revoke his parole by majority vote of the members of the board, by an order in writing signed by the chairman, upon forms and in manner to be prescribed by the rules of the board. Prior to revoking the parole of any prisoner, the board may declare him to be delinquent on parole and shall notify him of this fact and of the reasons for the proposed revocation, and may, in accordance with its rules, permit him an opportunity to appear before the board and show cause why his parole should not be revoked." (Emphasis added)
N.J.S.A. 30:4-123.24 provides:
"A prisoner, whose parole has been revoked because of conviction of a crime committed while on parole, shall be required, unless sooner reparoled by the board, to serve the balance of time due on his sentence to be computed from the date of his original release on parole. If parole is revoked for reasons other than subsequent conviction for crime while on parole then the parolee, unless sooner reparoled by the board, shall be required to serve the balance of time due on his sentence to be computed as of the date that he was declared delinquent on parole." (Emphasis added)
Obviously these two sections of the Parole Act confer power on the board to declare a convict delinquent in proper cases and then upon later revocation for reasons other than conviction of crime to require him to serve out his old sentence from the date of declaration of delinquency rather than the date of revocation of the parole. The basis for the distinction was made apparent at the oral argument. A parolee may fail to report or to meet other conditions on which his continued liberty depends. The board being unaware of the cause, or perhaps being desirous of awaiting the outcome of a new arrest, and recognizing that justification may exist for the failure or that the new arrest may be baseless, does not wish to take the drastic action of revocation until more information is made available or is discovered. However, if the presently unexplained conduct does in fact constitute a violation and some step is not taken by the board, the street time will continue to operate as a credit on the unserved maximum of the sentence. So to avoid this possibly undeserved result, a declaration of delinquency is *413 filed. Thereafter, at a more appropriate time, a determination is made under section 123.23, supra, as to whether revocation should be required. If ordered, then the mandate of section 123.24 necessitates the computation of the period remaining to be served from the date of the delinquency declaration. Thus the legislative scheme operates fairly in the interest of the public and the prisoner.
In the absence of any proof that the board did not comply with the requirements of the section referred to with respect to notice of revocation and its own rules, we assume that administrative regularity was pursued.
Under the circumstances, it cannot be denied that Van Dorn lost his street time credit from November 30, 1954 to January 26, 1956. Thus the total period to be used in the adjustment of the expiration date of the maximum of his sentences is 1053 days and the order of the board is proper.
In this connection it should be said that our conclusion does not conflict with the credit contemplated by N.J.S.A. 30:4-123.22. Under that section, if an officer having supervision of a parolee has reasonable cause to believe that the conditions of parole are being broken or are about to be broken, and the situation is one of emergency that cannot wait until the next meeting of the board, he may notify the parole division which may treat the parolee as delinquent. Thereupon the officer may retake the alleged violator and return him to the place of original confinement or cause his confinement in any appropriate jail pending a decision at the next meeting of the board as to whether the parole shall be revoked. If revocation is determined upon, the prisoner is required to be accorded credit on his original sentence for the period of confinement between the delinquency arrest and the order of revocation. Obviously this portion of the act relates only to the particular situation described and does not apply where a declaration of delinquency is entered formally by the board following a new arrest of the parolee for another alleged crime or for alleged violation of the concurrent parole of another jurisdiction. *414 In the latter cases, if the confinement continues because of revocation of the foreign parole or conviction of the additional crime (and the New Jersey parole has been revoked and a detainer filed), then the time so spent cannot be taken into account in the computation of the period remaining to be served on the original sentence in this state. N.J.S.A. 30:4-123.27; Lipschitz v. State of New Jersey, 43 N.J. Super. 386 (App. Div. 1957).
Affirmed.