482 P.2d 76

Clayton Gene HEATH, Plaintiff-Appellant,

v.

The STATE of Idaho, Defendant-
Respondent.

Eddie JAMES, Jr., Plaintiff-Appellant,

v.

The STATE of Idaho, Defendant-
Respondent.

Nos. 10546, 10547.

Supreme Court of Idaho.

March 3, 1971.

Gardner W. Skinner, Jr., of Webb, Tway & Redford, Boise, for plaintiffs-appellants.

Robert M. Robson, Atty. Gen., and Stewart A. Morris, Asst. Atty. Gen., Boise, for defendant-respondent.

DONALDSON, Justice.

These two appeals present the identical question,[1] viz., whether or not habeas corpus relief will be granted to an inmate of the Idaho State Penitentiary claiming unlawful detention because several of the incidents required by due process of law at criminal trials were not observed at their parole revocation hearings. Appellants also contend that they were denied their Federal Constitutional right to equal protection of the laws by certain policies followed by the State of Idaho. The pertinent facts disclosed by the records in these cases are as follows.

The appellants (James and Heath) were sentenced to serve time in the Idaho State Penitentiary but each was subsequently paroled. While on parole, each of the appellants was returned to the State Penitentiary because the parole authorities determined that they had failed to observe the rules and conditions of their parole. While in custody, both Heath and James filed separate petitions for writs of habeas corpus (the denial of which form the basis for this appeal), each alleging that he was being held in unlawful custody because: (1) no hearing was held with

---

1. On June 1, 1970, the cases of James v. State, No. 10547, and Heath v. State, No. 10546, were consolidated by Order of the Supreme Court of Idaho for purposes of oral argument and use of transcript.

respect to his parole violation [2] and (2) he was not advised of his right to a parole violation hearing by a judge.

Subsequent to the filing of writs of habeas corpus and while they were still pending in district court, parole violation hearings were held for each of the appellants by the State Commission for Pardons and Parole. The hearings resulted in adverse determinations against both James and Heath. The district court then denied the writs of habeas corpus and made the following conclusions of law:

"I. '

" * * * a parolee from the Idaho State Penitentiary must be given a hearing by the proper authorities prior to having his parole revoked, and as such and with regard to the above Petitioners, such a hearing was given to each.

"II.

"Further and with regard to the hearings as referred to above, each was fair, impartial and meaningful as contemplated by law and this Court. The Petitioners having been given the opportunity at hearing: (1) to be represented by counsel at their own expense, (2) to present evidence on their own behalf, and (3) to cross examine any witness or evidence presented by the State."

Heath and James have appealed to the Supreme Court from the orders of the district court denying their petitions for writs of habeas corpus contending that the district court erred by finding that the parole violation hearings afforded to them were meaningful [3] and they furthermore maintain that the lower court erred by not finding that the appellants were entitled to be represented by court appointed attorneys at the parole revocation hear-

2. Functions and Procedures of the Idaho State Commission for Pardons and Parole "Hearing on Revocation," October 24, 1969, p. 12, provides as follows:
   "A prisoner retaken upon a warrant issued by the Commission and committed to the Idaho State Penitentiary, shall be given an opportunity to appear before the Commission at the next regular meeting of the Commission. The Commission may then, or at any time in its discretion, revoke and terminate the order of parole or modify the terms and conditions thereof.
   A prisoner charged by the Commission with violation of parole may be either represented at his revocation hearing by an attorney and/or voluntary witnesses who wish to testify in his behalf relative to the charges. Prior to the scheduled hearing, the prisoner will be presented with a form on which he is required to indicate that he intends to obtain an attorney and/or witnesses, or waive such opportunity. No hearing will be postponed, except at the discretion of the Commission, more than thirty days for the purpose of obtaining counsel or witnesses. Where the prisoner has been afforded at least thirty days in order to obtain counsel and/or witnesses, the hearing will not be further postponed, except at the discretion of the Commission,

beyond the period required to dispose of the business of the Commission at the institution or other place where revocation hearing is scheduled to be conducted. The Commission is not required to furnish counsel or witnesses and will not undertake to do so under any circumstances."
   Now this hearing is provided for by statute, i. e., I.C. § 20-229.
   "20-229. Revocation of good time or parole for infraction of penitentiary rules —Hearing before board.—In case any convicted person undergoing sentence commits any infractions of the rules and regulations of the penitentiary, the state board of correction may revoke any good time heretofore earned and may revoke any parole previously granted. Such revocation shall not be made except upon a hearing upon the question of the infraction of the rules charged to such convicted person before the board."

3. Appellants' principal contentions are (1) that the hearing that was held was held too long after (5½ months) the alleged violation to be meaningful and (2) the hearing was not held near the place of the alleged violation. Appellants maintain these two factors (remoteness in time and place) prevented them from calling witnesses in their behalf.

ings. The district court, however, did find that the two appellants were informed that they could retain counsel at their own expense to represent them at the parole revocation hearings.

■ The essential questions to be decided by this appeal are whether or not parolees who have been charged with violation of the terms of the parole are entitled to all the benefits and incidents of due process of law and are specifically entitled to be represented by court appointed counsel at a hearing conducted for the express purpose of determining whether their parole will be revoked.

The State of Idaho provides for a hearing when parole is revoked.[4] It also appears from the record in the instant case that the State permits counsel to represent the parolee at such hearing. However, the expense of hiring counsel must be borne by the parolee and counsel will not be provided for him by the State. This, contend appellants, is a violation of the equal protection clause of the United States Constitution since it constitutes an unlawful discrimination between a parolee who is able to afford his own attorney and a parolee who is a pauper.

A short discussion of the concepts of parole, parole revocation, and the relationship borne by each to the concept of personal liberty will be beneficial in order to meaningfully respond to the problems posed by this appeal. An explanation of the relationship existing between the parolee and his parole board will also be essential to an understanding of this Court's conclusion. Loss of parole status generally means that the prisoner is required to serve out the remainder of his sentence within the prison walls. This obviously will enjoin the prisoner's personal liberty which he has heretofore enjoyed. However "personal liberty" must not be viewed as an abstract concept.

The personal liberty bestowed upon a paroled prisoner is entirely different from that which is normally enjoyed by ordinary citizens.

"A paroled prisoner can hardly be regarded as a 'free' man; he has already lost his freedom by due process of law and, while paroled, he is still a convicted prisoner whose tentatively assumed progress towards rehabilitation is in a sense being 'field tested.' Thus it is hardly helpful to compare his rights in that posture with his rights before he was duly convicted." Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 at 235 (1963).

The parolee is under active supervision of his parole officer, he must make periodic reports, he cannot change jobs, get married, or move from one place to another without permission and cannot associate with persons of undesirable character. Careful analysis reveals that the paroled prisoner is only "entitled" to this personal liberty because the state has made a determination that it is in the best interests of society[5] for prisoners to be paroled. Any discussion of the procedural rights to be observed in depriving a paroled prisoner of his parole status presupposes that he is not entitled to safeguards identical to those which are required to be observed when an individual is on trial for a crime. Due process of law varies widely with the circumstances. Hannah et al. v. Larche et al., 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed. 2d 1307 (1960); Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

"It [due process] is one thing in a prosecution for crime. It is another in administering the parole system." Hyser v. Reed, *supra*, 318 F.2d at 258 (special concurrence of Fahy, J.).

On its own initiative, the State of Idaho has provided by a regulation[6] that

---

4. See F.N. 2.

5. I.C. § 20–223 states: " * * * A parole shall be ordered only for the best interests of society, not as a reward of

clemency. It shall not be considered to be a reduction of sentence or pardon.

6. See F.N. 2.

certain procedures be followed before one's parole status is revoked.

This procedure [7] (hearing, etc.) is certainly fair when one considers that: (1) The parolee is still in constructive legal custody; (2) The parole board is not an adversary of the parolee attempting to place him in prison, but rather an agency which is to cooperate with the parolee in an attempt to determine what is best for society and the rehabilitation of the parolee. The function of a parole board is best described by the now Chief Justice Burger of the United States Supreme Court as follows:

> "Thus there is a genuine identity of interest if not purpose in the prisoner's desire to be released and the Board's policy to grant release as soon as possible. Here there is not the attitude of adverse, conflicting objectives as between the parolee and the Board inherent between prosecution and defense in a criminal case. Here we do not have pursuer and quarry but a relationship partaking of parens patriae. In a real sense the Parole Board in revoking parole occupies the role of parent withdrawing a privilege from an errant child not as punishment but for misuse of the privilege. 'Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders.' Williams v. People of State of New York, 337 U.S. [241] at 249, 69 S.Ct. [1079] at 1084, 93 L.Ed. 1337. Perhaps the more correct view is that retributive justice is satisfied by the conviction whereas the sentence is a process of treatment." Hyser v. Reed, *supra,* 318 F.2d at 237, 238.

(3) That there is no constitutional due process requirement with respect to the revocation of parole. See Hiatt v. Compagna, 178 F.2d 42 (5th Cir. 1949) aff'd., Per Curiam, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639 (1950); Petition of Osier, Mont., 477 P.2d 344, 345 (1970); Hyser v. Reed, *supra.*

■ In response to appellants' contention that the parole violation hearings afforded to them were not meaningful because of remoteness in both time and place, this Court directs attention to its conclusion that all the incidents of due process are not required to be observed at parole revocation hearings. However the rules and regulations promulgated by the State Commission for Pardons and Parole provide that if a parolee is taken into custody because he has violated the terms of his parole and he denies guilt, he is entitled to request an immediate local parole revocation hearing.[8] In this case the record does not disclose that the appellants ever requested a local revocation hearing nor did the appellants make a showing in district court that they had any witnesses who were unable to appear in Boise at the hearing before the Commission some five months later. Thus the district court's decision that the appellants had a "fair, impartial and meaningful hearing" was proper.

Appellants' claim that the decision of the United States Supreme Court in Mempha v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) requires that counsel be appointed for a parolee at a parole revocation hearing in order to refrain from violation of the principles of constitutional due process. That case involved revocation of an individual's probation which is an entirely different concept [9] than parole.

---

7. The record reveals that the procedure set forth in the regulation was followed by the State, even though the regulation may not have been published at the time the parole revocation hearings were held.

8. The present rules were adopted on October 24, 1969, i. e., a date subsequent to the date upon which the parole violations occurred. Search discloses that they were essentially the same as the previous rules of the parole board.

9. Parole is a provisional release from confinement, but is in legal effect imprisonment. Commonwealth ex rel. Lerner v. Smith, 151 Pa.Super. 265, 30 A.2d 347 (1943). Parole is intended to be a

Parole is an effective procedure in the rehabilitation of a prisoner and should be liberally used, based upon the premise that if a parolee violates the terms of his parole it may be revoked quickly and surely. If the parolee knows and understands this it will make parole that much more effective in his rehabilitation. However, if the courts make parole procedure cumbersome, expensive and time consuming then its use will be seriously restricted to the detriment of the prisoner and to society.

On the other hand revocation of parole has serious consequences to the parolee affected and the process whereby revocation is effected must live up to certain minimum notions of fairness. The problem of the courts is to balance these two objectives within the constitutional framework whenever it appears they might conflict. Therefore with these two objectives in mind this Court refuses to expand the holding of Mempha v. Rhay that counsel will be appointed to represent an indigent parolee at a parole revocation hearing.

Appellants claim that to allow parolees with sufficient funds to retain attorneys to represent them at parole revocation hearings, but not to provide such legal representation for indigent parolees constitutes a denial of equal protection. This Court does not agree with that contention.

"Laws such as these do not deny equal protection to the less fortunate for one essential reason: the Equal Protection Clause does not impose on the States 'an affirmative duty to lift the handicaps flowing from differences in economic circumstances.' To so construe it would be to read into the Constitution a philosophy of leveling that would be foreign to many of our basic concepts of the proper relations between government and society. The State may have a moral obligation to eliminate the evils of poverty, but it is not required by the Equal Protection Clause to give to some whatever others can afford." Douglas v. California, 372 U.S. 353 at 362, 83 S.Ct. 814, at 819, 9 L.Ed.2d 811 (1963) (dissenting opinion of Mr. Justice Harlan).

This Court agrees with the reasoning expressed above and finds it pertinent to the case at bar, especially in light of the fact that this case involves neither trial, nor appeal, but a situation where an individual has already been convicted of a crime, sentenced to the penitentiary, and who is presently in the custody of the state. The proceeding in question is one of legislative or administrative grace wherein the individual, if he so desires (as in any other type of legal proceeding) may retain the services of counsel. Under these circumstances it is the opinion of this Court that failure to provide an indigent parolee with counsel at his parole revocation hearing at state expense while allowing him to secure legal representation at his own expense, does not constitute an invidious discrimination and hence is not a denial of equal protection.

Judgment affirmed.

McQUADE, C. J., and McFADDEN, SHEPARD and SPEAR, JJ., concur.

means of restoring offenders who are good social risks to society. Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943). Parole is a procedure by which the prisoner is allowed to serve the final portion of his sentence outside the gates of the penal institution on certain terms and conditions in order to prepare for his eventual return to society. Application of Clover, 34 N.J.Super. 181, 111 A.2d 910 (1955). Parole is distinguishable from probation in that "probation" relates to action taken before the prison door is closed on a convict, whereas parole relates to action taken after the door has closed on him. Parole suspends the further execution of a penalty already being inflicted whereas probation consists of suspending imposition of a sentence or suspending imposition of a sentence prior to commitment. 21 Am.Jur.2d Crim.Law, § 562, p. 532. Also see the differences between the two noted throughout this opinion.