12 N.J. Super. 407 (1951)
79 A.2d 731
IN THE MATTER OF THE APPLICATION OF EDWARD KNEIPHER FOR ISSUANCE OF WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Mercer County Court Law Division.
Decided March 9, 1951.
*409 Mr. Floyd L. Buzzi, attorney for the petitioner, in forma pauperis.
Mr. Theodore D. Parsons, Attorney-General of the State of New Jersey (Mr. Eugene T. Urbaniak, Deputy Attorney-General, appearing), attorneys for the State.
HUGHES, J.C.C.
On the representation that he is illegally confined in the New Jersey State Prison, petitioner, Edward Kneipher, was granted the writ of habeas corpus under the authority of R.S. 2:82-1, et seq. On the return of the writ, a *410 hearing was had, testimony taken and stipulations entered, projecting the following issues:
On May 3, 1944, petitioner was sentenced in the former Essex County Court of Quarter Sessions to serve a sentence of not less than two nor more than five years and he thereafter commenced the service of such sentence at the State Prison. At the expiration of the minimum term thereof, as reduced by the uniform commutation time credits allowed by law (R.S. 30:4-140), he was granted a license to be at large pursuant to R.S. 2:198-1, repealed L. 1949, c. 18, by the former Court of Pardons. Two of the several conditions imposed upon him by that court, the imposition of which was authorized, generally, by such statute, were as follows:
"6. If you are returned to prison by revocation of parole, the time between your release upon this license and your return to prison will not be taken into account as part of your sentence, * * *."
"7. You must not change your residence to another State, unless you have beforehand obtained permission from the Keeper."
The prisoner accepted his license to be at large on these and other conditions, as evidenced by his signature of acceptance thereof.
During the period of his enlargement under the license (measured by the unexpired maximum of his original sentence, less the uniform commutation credits to which he was entitled under R.S. 30:4-140), the prisoner left the State of New Jersey and failed to report periodically, as required by another condition of his license, and thereby violated certain of the conditions under which the license had been issued to him. For such reason, his parole was revoked on December 9, 1947, as authorized by the statute, R.S. 2:198-3, repealed L. 1949, c. 18, and later, on March 11, 1949, he was returned to the State Prison as required by R.S. 2:198-4, repealed L. 1949, c. 18. It is to be noted that such revocation was based on the breach of the conditions aforementioned and not upon the subsequent commission of any crime, and so far as the record shows the petitioner has not been convicted of any crime subsequent to the one on which he was originally sentenced and imprisoned.
*411 The return to the writ predicates his present detention upon the foregoing sequence of events, the State contending that in accordance with the conditions upon which the license to be at large was granted petitioner, and the revocation of such as aforesaid, it properly holds him to serve the unexpired portion of the maximum of his original sentence. On the other hand, the petitioner contends that the time under his original sentence continued to run during the period he was "on the street," that is, during the time he was at large under his license, and innocent of conviction of subsequent crime or other lesser breach of condition of his license, that he may not be required to serve any portion of that time by reason of the revocation and, consequently, that he is entitled to immediate release.
This claim is based upon several grounds. Petitioner claims that during the period of his parole, time continued to run against his maximum sentence since he was still in the technical legal custody of the Keeper of the State Prison, pointing to certain terms of his license as follows:
"This license to be at Liberty, or Parole, is issued upon the following Security, Terms, Conditions and Limitations.
1. You continue to be legally in custody of the Prison Keeper, until you are released therefrom as provided below."
He cites Anderson, Warden, etc. vs. Williams, 279 Fed. 822 (C.C.A. 8), for the proposition that time out of prison on parole is not a suspension of the sentence, but merely substitutes for confinement in the penitentiary, confinement within the bounds specified by his parole outside of the penitentiary, still subject to the legal custody of the warden. This case, however, dealt with the right of the parole board, acting under the federal statute (Act of June 25, 1910, 36 Stat. 819, 820; 18 U.S.C.A. §§ 4203-4207), to revoke a parole after the expiration of the maximum sentence, i.e., the time in confinement and the time on parole, and, thus, this authority is not pertinent to the present issue, for the instant revocation occurred well before the calendar expiration of the maximum of the petitioner's sentence, in any event.
*412 Despite the first condition of the license, which creates a constructive custodial relationship between the prisoner and the Principal Keeper for the New Jersey State Prison, such "custody" does not mean that time runs on the sentence during enlargement under the license (or on parole, so-called, as that term may be and is employed to describe the license granted by the former Court of Pardons), to be applied in the event of revocation of parole. For such time to run on the sentence would, in effect, gradually so diminish the punitive power of the paroling authority as to subvert the very purposes of parole and to incline the Legislature to authorize its granting more reluctantly, as a matter of public policy. And in the face of the conditions attached to the grant of the license, which are undoubtedly valid and binding on acceptance by its intending grantee (46 C.J. § 1207, p. 73), it is clear that generally he is bound by them, including condition 6. The latter requires him, in the event of his return to prison by reason of revocation, to serve as a part of his unserved maximum sentence, "the time between * * * release upon this license and * * * return to prison * * *." Ex Parte Macejka, 10 N.J. Super. 393 (Cty. Ct. 1950).
This petitioner, however, insists that the condition attached to his license is ineffective in the face of the recent parole law, which differentiates between revocation of parole based upon subsequent conviction of crime, and that based on grounds of less serious import such as, in his case, a departure from the State, which violates the covenant on which the parole was granted.[1]R.S. 30:4-123.24, N.J.S.A.
*413 This section of the law denotes a legislative policy of emphasis upon the subsequent conviction of crime leading to revocation of parole and prescribes a different mode of treatment in the application of more stringent sanctions for this type of violation. The prospective nature of the Parole Act, L. 1948, c. 84, supra, which was effective May 28, 1948, is recognized in section 37 thereof, which provides that "any prisoner sentenced prior to the effective date of this act shall retain all rights of eligibility for parole available to him under any preexisting law." The act contained a specific repealer of R.S. 30:4-106.1, 30:4-106.2, 30:4-142, N.J.S.A. and provided that all acts and parts of acts inconsistent with its provisions were, to the extent of such inconsistencies, repealed. R.S. 30:4-123.37, 30:4-123.38, 30:4-123.39, N.J.S.A.
The statutes specifically repealed stemmed, generally, from the first statute providing for the granting of parole as such, and for the procedure thereon, which was contained in the Criminal Procedure Act (Revision of 1898) Comp. Stat., p. 1877, § 171, and they vested the power of granting paroles in the Board of Managers of the New Jersey State Prison. In re N.J. Court of Pardons, 97 N.J. Eq. 555 (advisory opinion of Chancellor Walker, as a member of the former Court of Pardons, 1925). The statutory grant of such power of parole has long since been held constitutional as neither interfering with judicial power, nor trespassing upon the prerogative of the sovereignty in the granting of pardons (In re Marlow, 75 N.J.L. 400 (Sup. Ct. 1907), parole and pardon being completely distinctive. Ex Parte Fitzpatrick, 9 N.J. Super. 511 (Cty. Ct. 1950).
The 1844 Constitution, in Article V, par. 10, vested the pardoning power in the Executive, with the concurrence of the former Chancellor and the six judges of the former Court of Errors and Appeals, or a majority part of this group including the Executive, and this body, although not so designated in the Constitution, and although not truly a court in the usual sense, became known as the Court of Pardons. Cook v. Freeholders of Middlesex, 26 N.J.L. 326 (Sup Ct. 1857); *414 R.S. 2:10-1, et seq., repealed L. 1948, c. 83. Our late Chancellor Walker stated, without reservation, that such Court of Pardons, under the 1844 Constitution, represented and exercised the constitutional power of the sovereignty in the granting of pardons, which paralleled the royal prerogative of pardon as it existed in England and was exercised, exclusively, by the king. The statute, R.S. 2:198-1, et seq., authorized the former Court of Pardons to exercise power equivalent to parole, but Chancellor Walker asserted that even without this statutory authority it had the power, in effect, to grant a parole by bestowing upon a convict a limited pardon  one with such conditions annexed as would make it a virtual parole according to common understanding of that term. In re N.J. Court of Pardons, supra.
It is of interest to note that the latter statute specifically required a condition such as that here involved, for it provided the following as a sequel to revocation thereof:
"* * * The holder of the license, when returned to the place of confinement from which he was released thereunder, shall be detained therein according to the terms of his original sentence; and, in computing the period of his confinement, the time between his release upon such license and return to the place of confinement shall not be taken to be any part of the term of sentence. * * *" R.S. 2:198-4.
Nor did the statute distinguish between violations of penal law and any other default on the conditions, terms or limitations of the license, requiring revocation for both types of violation thereof. R.S. 2:198-3.
And, if this statute was merely declarative of the right of the holder of the executive power to grant a pardon so limited in its terms as to make it equivalent to a parole, as commonly understood (In re N.J. Court of Pardons, supra), it is difficult to conceive how a limitation, even though not authorized by such statute, in the sense of condition six, would be in excess of that pardoning power.
The 1947 Constitution, in Article V, Section II, deals with both pardon and parole, as follows:

*415 "SECTION II
1. The Governor may grant pardons and reprieves in all cases other than impeachment and treason, and may suspend and remit fines and forfeitures. A commission or other body may be established by law to aid and advise the Governor in the exercise of executive clemency.
2. A system for the granting of parole shall be provided by law."
An implementing statute, L. 1948, c. 83, effective May 28, 1948, in addition to declaring the demise of the former Court of Pardons by repealing R.S. 2:10-1, confirmed to the Governor the pardoning power possessed by him under the organic law, not omitting a specific statutory formula for the exercise by him of the included power to grant limited pardon, inter alia, by commuting sentences under conditions which, again, would seem to make such limited pardon "a virtual parole according to common understanding."
On the same significant date as hereinabove noted, May 28, 1948, there was effective yet another implementation statute, L. 1948, c. 85, dealing specifically with the "open accounts" of the former Court of Pardons and amending R.S. 2:198-1 to read, in part, as follows:
"Any convict who was undergoing imprisonment in any of the penal institutions of this state and to whom was granted a license to be at large by the court of pardons shall remain subject to the security, terms, conditions and limitations, in all respects upon which the same was granted. * * *"
The statute places the revocation power as to such license in the hands of the Governor, and repeats the provisions of R.S. 2:198-4, requiring the defaulting holder of the license to serve out the unexpired term of his original sentence, not including as a part thereof the time he was at large upon such license.
It is significant that this statute dealing specifically with licenses issued by the former Court of Pardons became effective on the same date as L. 1948, c. 84, supra, which in carrying out the constitutional mandate for the establishment of a system for the granting of parole, organized a State Parole Board and reposed in it exclusive power to grant parole to *416 State Prison inmates serving indeterminate sentences, except for that equivalent or comparable authority inhering in the Governor incident to the exercise by him of the power of executive pardon.
Again, in apparent further implementation of the constitutional changes wrought by that of 1947, and dealing not only with licenses to be at large issued by the former Court of Pardons under the previous system, but also with orders commuting sentences made by the Governor under the new, the Legislature, by L. 1949, c. 18, effective April 11, 1949, again set down the formula for granting such orders of commutation, and revoking such licenses and such orders, and again specified that upon revocation of either of the same, the holder or grantee thereof would be detained according to the terms of his original sentence. Similarly, such statute re-specified that the time between the conditional release of the offender and his return to confinement would be taken to be no part of the term of such sentence, and it made no distinction as to the cause for revocation thereof, whether for conviction of crime (specifically for "violation of penal law"), or otherwise.
There is, thus, evinced a continued and unvarying legislative purpose to deal differently with paroles on the one hand, and licenses to be at large under the former system and the present executive orders for commutation of sentences, on the other. The differentiation in the sanctions to be applied in case of revocation of parole for conviction of crime and revocation for other and presumably less serious causes, which is a part of the parole law, R.S. 30:4-123.24, N.J.S.A., applies neither in letter nor in principle to the exercise by the sovereignty of the power of limited pardon, which has been referred to as parole, and contains most of the incidents thereof, but which, basically, inheres in the Executive under the organic law and is not, like parole power as such, merely statutory in origin. The consequences of revocation do not comprise the only difference in these parallel systems. Although the State Parole Board has wide discretionary powers as to the ultimate granting of parole, the statute is confining both from *417 procedural and substantive standpoints, such as prescribing the time for eligibility of prisoners for parole consideration, and the like. No comparable limitations bind the Governor[2] in the exercise of his function equivalent to parole in the commonly understood sense, and since such statutory grant is merely declaratory of his power under the Constitution to grant full and limited pardons, the latter including the commutation of sentences referred to, it is certain that any such stricture would be constitutionally ineffective.
In view of the foregoing, it is quite obvious that insofar as these statutes are in pari materia in dealing with the granting of relief against exaction in full measure of justice in the service of sentences for crime, there is (if such be possible) even more than the ordinary compulsion for applying the rule of statutory construction that they must be considered together so as to give full effect to each. The section on which petitioner rests his case does not apply in any way to the license to be at large originally enjoyed by him, nor to the consequences of its revocation.
The contention that enforcement of condition six of this license to be at large is "ex post facto," or amounts to an increase in the punishment imposed by the court in the first instance, is meaningless and is discarded as a basis for discharge on the writ.
Accordingly, I determine that the petitioner is held to compliance with condition six of his license, and must, unless sooner re-paroled, serve the maximum term of the sentence on which he had been paroled, and that he is not entitled to immediate release.
The writ is discharged and the petitioner remanded to custody.
NOTES
[1] "30:4-123.24. Serving balance of time after revocation.

A prisoner, whose parole has been revoked because of conviction of a crime committed while on parole, shall be required, unless sooner re-paroled by the board, to serve the balance of time due on his sentence to be computed from the date of his original release on parole. If parole is revoked for reasons other than subsequent conviction for crime while on parole then the parolee, unless sooner re-paroled by the board, shall be required to serve the balance of time due on his sentence to be computed as of the date that he was declared delinquent on parole. L. 1948, c. 84, p. 488, § 24."
[2] "5. The Governor may, upon application for commutation of sentence of any person sentenced to imprisonment, order that such sentence be commuted upon such terms, conditions and limitations as the Governor, in his discretion, may direct * * *." L. 1948, c. 83, supra; R.S. 2:196A-5, N.J.S.A.