300 F.2d 386
 Harry SERIO, Appellant,
v.
Milton J. LISS, President of Local No. 478 of the
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America; and Local No. 478 of
the International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America; and Arthur J. Goldberg,
Secretary of Labor of the United States.
 No. 13571.
 United States Court of Appeals Third Circuit.
 Argued June 9, 1961.
Decided Nov. 17, 1961.
 
 Thomas L. Parsonnet, Newark, N.J. (Parsonnet, Weitzman & Oransky, Newark, N.J., on the brief), for appellant.
 Marvin S. Shapiro, Washington, D.C. (William H. Orrick, Jr., Asst. Atty. Gen., Chester A. Weidenburner, U.S. Atty., Newark, N.J., Morton Hollander, Atty., Dept. of Justice, Washington, D.C., Charles Donahue, Sol., James R. Beaird, Asst. Sol., Louis Weiner, Deputy Asst. Sol., Dept. of Labor, Washington, D.C., on the brief), for appellee.
 Before BIGGS, Chief Judge, and HASTIE and FORMAN, Circuit Judges.
 BIGGS, Chief Judge.
 Serio, an elected 'Business Agent' of Local No. 478, sued Liss, its President, to restrain the Local from discharging him as business agent pursuant to Section 504 of the Labor-Management Reporting and Disclosure Act of 1959 (The Landrum-Griffin Act), 29 U.S.C.A. 504. Though he, Serio, had been convicted of the crime of atrocious assault and battery and had served a term of imprisonment, he asserts that the five-year cleansing period, prescribed by Section 504, has expired and he is therefore entitled to retain his office. Serio seeks a declaratory judgment to such effect.
 The Secretary of Labor was permitted to intervene as a party defendant by the court below. While no motion for summary judgment was filed, the case was treated by the court below as if cross motions for summary judgment had been made by the parties. The court below decided that Serio was holding office illegally. See 189 F.Supp. 358 (1960).[1]
 The court below had jurisdiction of the suit at bar by virtue of Section 504(a) of the Act, 29 U.S.C.A. 504(a),[2] and Section 1337, Title 28 U.S.C.[3] In our opinion the case at bar is one in which the cause of action 'arises under' a law of the United States, inasmuch as Serio's claim for declaratory relief is based directly upon Section 504(a) of the Act. In so stating we have not overlooked the carefully reasoned opinions of Judge Clary in Strauss v. International Brotherhood of Teamsters, et al., 179 F.Supp. 297 (D.C.E.D.Pa.1959) and of Chief Judge Thomsen in Jackson v. Martin Co., 180 F.Supp. 475 (D.C.Md.1960), based in large part on Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). In Gully, Mr. Justice Cardozo stated: 'How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.' The court below, in declining to follow the reasoning of the Strauss and Jackson cases, draws support for the finding of jurisdiction from Starin v. New York, 115 U.S. 248, 257, 6 S.Ct. 28, 31, 29 L.Ed. 388 (1885). The Supreme Court said by Mr. Chief Justice Waite: 'The character of a case is determined by the questions involved. * * * If from the questions it appears that some title, right, privilege, or immunity, on which the recovery depends, will be defeated by one construction of * * * a law of the United States, r sustained by the opposite construction, the case will be one arising under the * * * las of the United States, within the meaning of that term as used in the act * * *; otherwise not.' The Chief Justice cited Osborn v. Bank of the United States, 9 Wheat. 738, 6 L.Ed. 204 (1824), Cohens v. Virginia, 6 Wheat. 264, 5 L.Ed. 257 (1821), and numerous other authorities.
 
 
 1
 We think that the sound but contrasting principles of Gully and Starin are sometimes construed, respectively, too narrowly or too broadly, to reflect accuraely the reach of federal question jurisdiction under Sections 1331 and 1337, Title 28 U.S.C. The Starin rule is not completely compatible with those decisions denying jurisdiction in which the plaintiff's claim is derived from or is dependent upon state law, even though the construction and constitutionality of a federal statute are the decisive issues in the case. See, e.g., Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Cf. Skelly Oil Co. v. Phillips Petroeum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). On the other hand, the Supreme Court has recognized exceptions to the Gully standard also. Thus, jurisdiction was not questioned in Jewell Ridge Coal Co. v. United Mine Workers, 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534(1954), or Tennessee Coal etc. Co. v. Muscoda Local, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944), where the plaintiff employers sought a declaratory judgment negating the federal right asserted by the defendant employees under the Fair Labor Standards Act, 29 U.S.C.A. 201 et seq.[4] And, when the plaintiff voiced constitutional objections and attempted to enjoin the defendant from carrying out a federal duty prescribed by the Agricultural Adjustment Act, 7 U.S.C.A. 1311-1314, the Court in Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092 (1939), expressly bottomed jurisdiction on Section 1337. We think that the facts of the instant case are jurisdictionally indistinguishable from those in Mulford and that the court below had jurisidction under Section 1337.
 
 
 2
 We realize of course that there are claims directly founded on federal law, in which the national interest is not large,[5] and that to bring all of these into the federal trial courts, would overburden these tribunals to an extent which might cripple their efficiency. But we cannot doubt that Congress considered the provisions of Section 504(a) of the Act as important in effecting a national purpose. By the declarations of findings, purposes, and policy of Section 2 of the Act, 29 U.S.C.A. 104, Congress made it clear that it was its intention that labor union officials should adhere to the 'highest standards of responsibility and ethical conduct in administering the affairs of their organizations', and that there had been failures to meet those high standards of responsibility and of ethical conduct. We believe that Congress intended the provisions of Section 504(a) to have an antiseptic and purifying effect on the conduct of union affairs by union officials and officers and made clear that an indvidual with a criminal record should not be employed n a position of union responsibility until he had reestablished his probity by a five year penitential period. Congress made this a national policy and in our opinion deemed that policy to be of such importance as to prmit its application through adjudications by the national courts.
 
 
 3
 At first examination of the record this appeal seems to be moot. Serio's term as business agent will be at an end on December 31, 1962. The five-year interdiction period of Section 504(a) came t an end no later than December 31, 1960, whether one accepts the view of the Secretary that enlargement of custody by parole is not termination of imprisonment or Serio's view that it is. But Serio was removed from the payroll when the temporary restraint imposed upon the Local by the order of November 2, 1960 was dissolved by the court's order of December 13, 1960. Serio was returned to the payrool on January 2, 1961. He therefore is owed a few days pay if he was not subject to the statutory interdiction.[6] This issue alone keeps the case from mootness. We do not have to determine whether Serio was or was not under the interdiction of the statute at the time of his election as business agent nor do we have to determine whether or not he was or is a member of the Local or of the International. Indeed we cannot do so on the present record. See note 1, supra. We do not have to determine his union membership because the provisions of Section 504(a) are operative as to any person, union member or not, who holds a union office, the words of the statute being that 'No person who * * * has been convicted of * * * assault which inflicts grievous bodily injury * * * shall serve * * * as (a) * * * business agent * * * for five years * * * after the end of' his imprisonment. But we do have to determine, as did the court below, whether the five-year interdiction period did expire on December 31, 1960; for if it expired at an earlier date, as Serio contends, he lost some pay amounting, with interest, to about $500. On the other hand Serio was deprived of nothing to which he was entitled if the Secretary's theory is correct that his enlargement by parole was not a termination of imprisonment.
 
 
 4
 The Secretary insists that this issue must be decided by federal law alone, wether the parolee is paroled by state law or by federal law. If the parolee had committed a federal crime, had been incarcerated in a federal jail and was paroled by the Federal Parole Board, the term 'after the end of such imprisonment', employed in Section 504(a), must be tested by federal law alone since no state law is involved. It is clear that federal law includes parole as part of imprisonment. This is conceded by Serio. If, on the other hand, an individual was convicted of a serious state offense, an assault which inflicted grievous bodily injury, as here, was imprisoned in a state institution and was paroled by virtue of state law, must the phrase 'after the end of such imprisonment' be tested solely, as Serio insists, by the law of the state in which the convicted person was sentenced and later paroled?
 
 
 5
 We are of the opinion that the two alternative positions stated by the Secretary and by Serio are too sharp in their outlines and that Congress intended that the laws of the states and of the United States should play conjoint and not disparate roles. If the state law of parole is not so unlike the federal law as to render the reach of Section 504(a) so variable or so limited that the cleansing period intended by Congress would be impaired, state law might well be applied to construe the phrase referred to. But we do not have to decide this issue here for testing the phrase 'after the end of such imprisonment' by the law of New Jersey there is no doubt that parole, under N.J.S.A. 30:4-123.15, does not remove the parolee from the legal custody and control of the State and that the prisoner while at large is always under surveillance by officers of the State. See the opinion of Attorney General Edmund Wilson, quoted in In re Court of Pardons of New Jersey, 97 N.J.Eq. 555, 571-72, 129 A. 624, 631 (1925). In Application of Clover, 34 N.J.Super. 181, 188, 111 A.2d 910, 914 (1955), the court stated: 'Parole is a procedure by which a prisoner is allowed to serve the final portion of his sentence outside the gates of the institution on certain terms and conditions * * *.' See also Ex parte Kneipher, 12 N.J.Super. 407, 79 A.2d 731 (1951). The very statute under which Serio was paroled states that a parolee 'shall at all times remain in the legal custody of the warden * * * of the institution from which he is paroled, and under the immediate supervision of the Division of Parole * * * until the expiration of the maximum sentence prescribed by law for the crime for which he was committed.' We hold therefore that whether federal law or New Jersey law be employed the five-year interdiction period of Section 504(a) came to an end no sooner than December 31, 1960 and therefore there is no sum owing from the defendant Union to Serio.
 
 
 6
 A further point requires brief discussion. It has not been raised by counsel nor was it considered by the court below. An examination of the record and the briefs will show that the adversary aspect of the litigation has been conducted entirely by the Secretary and that the original defendants filed an answer admitting in substance all of the allegations of the complaint. However, we do not see how they could have denied the verity of these allegations in good faith. The questions which remain are primarily those of law and they have been asserted most vigorously by the Secretary. Under the circumstances we are not inclined to treat the suit as a 'collusive' one or as a nonadversary proceeding. Compare United States v. Lovett, 328 U.S. 303, 306, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946), with United States v. Johnson, 319 U.S. 302, 63 S.Ct. 1075, 87 L.Ed. 1413 (1943). See 'Judicial Determinations in Nonadversary Proceedings', 72 Harv.L.Rev. 723 (1959). We think that under Rule 24(b), Fed.R.Civ.Proc. 28 U.S.C., read in the light of Sections 601(a) and 607 of the Act, 29 U.S.C.A. 521(a), 527, the Secretary, as the fundamental governmental officer charged with the effective execution of the Landrum-Griffin Act, was entitled to intervene and defend the action. To hold that a proceeding such as that at bar is a non-adversary one might limit lamentably future effective enforcement of the Act.
 
 
 7
 The judgment of the court below will be affirmed.
 
 
 8
 HASTIE, Circuit Judge, dissenting.
 
 
 9
 I dissent because the Judicial Code does not undertake to bring such an action as this within the original jurisdiction of the federal district courts. The pertinent statute, Section 1337 of the Judicial Code, provides that the district courts 'shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce * * *.'
 
 
 10
 The right asserted by Serio as plaintiff in this case against the defendant union and its president is necessarily his right to continue as business agent pursuant to the union constitution and regulations. This is plainly a right created by state law. Federal law enters the picture only as a possible source of an affirmative defense. More particularly, the defendants may assert that a provision of the Landrum-Griffin Act, 1959, 73 Stat. 536, 29 U.S.C., Supp. II 1959-1960, 504, makes it the union's duty to discharge Serio. Of course by pleading in his complaint that this is the union's legal position, plaintiff is merely anticipating a defense.
 
 
 11
 In such a situation we are bound by the repeated rulings of the Supreme Court that when a plaintiff's 'cause of action' or 'claim for relief' is based on state law, the case is not one 'arising under any Act of Congress' merely because defendant probably will invoke an affirmative defense based upon a federal statute. See Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 672, 70 S.Ct. 876, 94 L.Ed. 1194; Gully v. First National Bank, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Louisville & Nashville R.R. v. Mottley, 1908, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126; Metcalf v. Watertown, 1888, 128 U.S. 586, 9 S.Ct. 173, 32 L.Ed. 543. The Court reaffirmed this doctrine only a few weeks before the argument of the present appeal. See Pan American Petroleum Corp. v. Superior Court, 1961, 366 U.S. 656, 663-664, 81 S.Ct. 1303, 6 L.Ed.2d 584. Moreover, the language of the Pan American Petroleum case and the Skelly Oil case makes it clear that a plaintiff who asserts a right conferred by state law cannot bring his case within federal jurisdiction by pleading matter in anticipation of an affirmative defense that the defendant may assert under an Act of Congress.
 
 
 12
 I would, therefore, vacate the judgment below and remand the cause for dismissal for want of jurisdiction. It is not necessary to go beyond this question to express or discuss the very great difficulty I have in avoiding the conclusion that this is a collusive suit as against the union. It is also questionable whether the Secretary of Labor is suable here.
 
 
 
 [1]
 On close examination the case at bar does not seem to be one apt for disposal on motion for summary judgment because of the very abbreviated record. No motions for summary judgment appear in the record before us. That record does not disclose the date of Serio's election. We therefore cannot tell whether or not he was eligible for election to the office of business agent at the time he was elected. Neither the constitution nor by-laws of the Local nor those of the International are in evidence. The record does not disclose whether the election at which Serio was elected business agent of the Local was one which falls within the purview of Section 401(e) of the Act, 29 U.S.C.A. 481(e). The record does not show whether Seio was a member of the Local or of the International, though he is referred to in letters written by the International's house counsel as 'Brother Serio'. In this connection the court below stated: 'While plaintiff's right to become a candidate for and to be elected to the office which he holds presumably arise from the constitution and by-laws of the labor organization of which he is a member, his right to continue to occupy and his immunity from removal from that office depends upon the construction of section 504(a) of the Act.' 189 F.Supp. at p. 362. Nonetheless we think that the case can be disposed of on the present record
 
 
 [2]
 Section 504 provides:
 '(a) No person who is or has been a member of the Communist Party or who has been convicted of, or served any part of a prison term resulting from his conviction of, robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of subchapter III, or IV of this chapter, or conspiracy to commit any such crimes, shall serve--
 '(1) as an officer, director, trustee, member of any executive board or similar governing body, business agent, manager, organizer, or other employee (other than as an employee performing exclusively clerical or custodial duties) of any labor organization, or
 '(2) as a labor relations consultant to a person engaged in an industry or activity affecting commerce, or as an officer, director, agent, or employee (other than as an employee performing exclusively clerical or custodial duties) of any group or association of employers dealing with any labor organization, during or for five years after the termination of his membership in the Communist Party, or for five years after such conviction or after the end of such imprisonment, unless prior to the end of such five-year period, in the case of a person so convicted or imprisoned, (A) his citizenship rights, having been revoked as a result of such conviction, have been fully restored, or (B) the Board of Parole of the United States Department of Justice determines that such person's service in any capacity referred to in clause (1) or (2) would not be contrary to the purposes of this chapter. Prior to making any such determination the Board shall hold an administrative hearing and shall give notice of such proceeding by certified mail to the State, County, and Federal prosecuting officials in the jurisdiction or jurisdictions in which such person was convicted. The Board's determination in any such proceeding shall be final. No labor organization or officer thereof shall knowingly permit any person to assume or hold any office or paid position in violation of this subsection.
 '(b) Any person who willfully violates this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both.
 '(c) For the purposes of this section, any person shall be deemed to have been 'convicted' and under the disability of 'conviction' from the date of the judgment of the trial court or the date of the final sustaining of such judgment on appeal, whichever is the later event, regardless of whether such conviction occurred before or after September 14, 1959.'
 
 
 [3]
 Section 1337 provides:
 'The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.'
 The Landrum-Griffin Act, 29 U.S.C.A. 401-531, is an 'Act of Congress regulating commerce' within the meaning of Section 1337. See Section 2(c) of the Act, 29 U.S.C.A. 401(c); Jackson v. The Martin Co., 180 F.Supp. 475, 482 (D.C.Md.1960). The tests required by Section 1337 are the same as those demanded by Section 1331 except that no jurisdictional amount need be alleged. Peyton v. Railway Express Agency, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942). See Moore's Federal Practice, 2d ed., Vol. I, p. 627.
 
 
 [4]
 See also E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852 (7 Cir.), cert. denied, 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884 (1937); Mishkin, The Federal 'Question' in the District Courts, 53 Colum.L.Rev. 157, 179 (1953)
 
 
 [5]
 See Shoshone Mining Co. v. Rutter, 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864 (1900), and Mishkin, The Federal 'Question' in the District Courts, 53 Colum.L.Rev. 157 (1953). Professor Mishkin stated, id. at p. 162, that the national interest in some suits is 'negligible' and that 'To bring all these suits into the federal courts would place upon them-- and many of the litigants-- an unnecessary burden.'
 
 
 [6]
 Serio's supplemental memorandum, filed at the request of the court, states: 'It has been stated in open court that, by reason of the temporary restraint issued by the Court below, plaintiff was able to retain his office until December 13, 1960, at which time the restraint was dissolved, and his name was removed from the payroll. On January 2, 1961, the five-year disqualification (under the defendant's interpretation) having terminated, plaintiff returned to the payroll. Thus, in effect, he lost only two weeks' salary.'