**Abraham D. BERMAN**

v.

**LOCAL 107, INTERNATIONAL BROTH-ERHOOD OF TEAMSTERS, CHAUF-FEURS, WAREHOUSEMEN AND HELPERS OF AMERICA.**

Civ. A. No. 36924.

United States District Court
E. D. Pennsylvania.

Dec. 9, 1964.

sters, Chauffeurs, Warehousemen and Helpers of America, through its Executive Board, on November 12, 1964, "declared plaintiff ineligible to run for the position of Business Agent in the forthcoming election" by reason of plaintiff's conviction in 1963 for the offense of conspiracy to cheat and defraud Local 107, by a jury verdict and judgment of the Court of Quarter Sessions of Philadelphia County.[1]

Defendant admits that the basis of its Executive Board's decision of plaintiff's ineligibility was its interpretation of the prohibitions of Section 504 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 504.[2]

Upon my review of the applicable law, I conclude that the Union properly declared plaintiff ineligible and thus the plaintiff is not entitled to the injunctive relief sought.

### I

Abraham D. Berman and five other defendants were found guilty by a jury on June 3, 1963, for the crime of "conspiracy to cheat and defraud a union [defendant, Local 107] of its money, goods and property." Commonwealth v. Cohen, et al., 203 Pa.Super. 34, 199 A.2d 139, 143 (1964).

Judge David L. Ullman, the distinguished Judge who presided, summarized the evidence of this ten-week trial as follows:

"The Commonwealth presented evidence to show that the conspiracy commenced on or about June 10, 1954, and continued through and until at least September 19, 1957. The core of the conspiracy is shown by

John Patrick Walsh, John Rogers Carroll, Philadelphia, Pa., for plaintiff.

Richard H. Markowitz, Richard Kirschner, Philadelphia, Pa., for defendant.

HIGGINBOTHAM, District Judge.

Plaintiff, Abraham D. Berman, seeks an injunction which will order the defendant union to place his name on the ballot as a candidate for the office of Business Agent in the forthcoming elections to be held on and subsequent to December 12, 1964.

Defendant, Philadelphia Local 107 of the International Brotherhood of Team-

---

1. On January 1, 1962, plaintiff was appointed Business Agent of the defendant Union, the term of which expires on December 31, 1964. At the same meeting of November 12, 1964, the Executive Board ruled that plaintiff was ineligible to continue his position as Business Agent and had his name "removed * * * from the payroll." Plaintiff also seeks a declaratory judgment that he is "eligible to continue in his present position of Business Agent in accordance with his appointment thereto." However, it is not necessary to rule on his request for a declaratory judgment; this issue is moot by reason of Berman's present incarceration in prison, and there has been no showing or allegation that he would be entitled to be paid as a Business Agent of the Teamsters while incarcerated in a penitentiary.

2. Pub.L. 86–257, Title V, ¶ 504, Sept. 14, 1959, 73 Stat. 536.

the disbursements from the union's checking account into the pockets of one or more of the defendants. Thus, this conspiracy began with Check No. 8622, drawn on June 10, 1954, to the order of Cash in the amount of $15,000, signed by Raymond Cohen and Joseph B. Grace, and endorsed by Joseph Hartsough. That check and Check No. 8652 for $10,000, also signed on its face by Cohen and Grace and endorsed by Hartsough were used to pay for Raymond Cohen's election expenses.

"The continuity of the conspiracy was demonstrated by hundreds of union checks, introduced into evidence by the Commonwealth, which checks were cashed and paid out of the union's treasury. Between June 10, 1954 and September 19, 1957, there was a constant stream of such checks, with only short periods of time intervening between the issuance of checks on the various phases. These checks * * * were cashed in individual instances by one or another of the six defendants.

"The terminal points of the conspiracy were marked at the start by the two checks for $25,000, and at the end by the checks issued in connection with the International Convention of the Teamsters in Miami, Florida. * * * the central theme of the scheme to loot the union treasury runs through the entire case. * * *" Transcript of Opinion, Ullman, J., Sept. 3, 1963, pp. 5–6.

On March 17, 1964, the Superior Court affirmed the convictions of Berman and the other defendants, and held that "[a]fter a thorough consideration of the evidence in this case we are convinced that it was sufficient to sustain the convictions of each appellant." 199 A.2d 139 at 150, supra.

On June 2, 1964, Berman's petition for allowance of appeal was denied by the Supreme Court of Pennsylvania, and certiorari was denied by the United States Supreme Court on November 9, 1964. 85 S.Ct. 191. Berman is presently incarcerated in a Pennsylvania prison and has pending before me a habeas corpus petition,[3] filed on November 24, 1964, which alleges that the aforementioned State conviction was in violation of certain federal constitutional rights.

The pertinent provisions of the statute controlling the validity of defendant's exclusion of plaintiff from the Union ballot reads as follows:

"§ 504. Prohibition against certain persons holding office; violations and penalties

"(a) No person who is or has been a member of the Communist Party or who has been *convicted of, or served any part of a prison term resulting from his conviction of,* robbery, bribery, *extortion, embezzlement, grand larceny,* burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of subchapter III or IV of this chapter, or conspiracy to commit any such crimes, shall serve—

"(1) as an officer, director, trustee, member of any executive board or similar governing body, *business agent,* manager, organizer, or other employee (other than as an employee performing exclusively clerical or custodial duties) of any labor organization, * * *

"* * * for five years after such conviction or after the end of such imprisonment, * * *

"(b) Any person who willfully violates this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

"(c) For the purposes of this section, any person shall be deemed to have been 'convicted' and under the disability of 'conviction' from the date of the judgment of the trial court or the date of the final sustaining of such judgment on appeal,

3. The habeas corpus hearing is listed for December 8, 1964.

whichever is the later event, regardless of whether such conviction occurred before or after September 14, 1959." (Emphasis added.)

The major thrust of plaintiff's argument is that since the statute does not specify "a conspiracy to cheat and defraud" his conviction is not covered by any of the statutorily specified terms such as grand larceny[4] or embezzlement. Plaintiff further argues that the statute " * * * must be regarded as so penal in consequences" that the doctrine of "strict construction" of penal statutes must be applied in this civil injunctive case. Plaintiff's argument has been answered and rejected in every reported case on this Section. Serio v. Liss, 300 F.2d 386, (3rd Cir. 1961); Postma v. International Brotherhood of Teamsters etc., D.C., 229 F.Supp. 655; affirmed 2nd Cir., Oct. 2, 1964, 337 F.2d 609; United States v. Priore, 236 F.Supp. 542 (U.S. D.C., E.D.N.Y., 1964.)

Judge Brennan analyzed this issue with precision in Postma v. International Brotherhood of Teamsters etc., 229 F. Supp. 655 (1964) at 658, as follows:

"In 29 U.S.C. § 401, Congress has expressed in certain terms the purpose of the Labor-Management Reporting and Disclosure Act of which Section 504 is a part. After noting the existence of instances of breach of trust, corruption and disregard of the rights of individual employees, Congress declared that it is essential that officers of labor organizations adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organization. It found that additional legislation was necessary to eliminate improper practices on the part of labor organizations, their officers and representatives. In Serio v. Liss, supra, 300 F.2d at page 389, it is stated the intention of Congress in enacting Section 504(a) is 'to have an antiseptic and purifying effect upon the conduct of union affairs by union officials and officers * * *'. With the background of the purpose of the statute in mind, it would seem inescapable that the resulting legislation is principally remedial in its nature and must be applied in a manner to effectuate its purpose 'in the light of the mischief to be corrected and the end to be attained'. Warner v. Goltra, 293 U.S. 155 at 159, 55 S.Ct. 46 at 48, 79 L.Ed. 254."

For the issues presently pending in this civil matter, I need not decide whether under *criminal prosecution* for alleged violations of § 504, the terms of grand larceny or embezzlement should be read broadly. Nevertheless it should be noted that in the only reported case found involving similar problems in federal *criminal* prosecutions under this Section, Judge Mishler held that the Court should apply "The interpretation that will result in a rational scheme and give deminsion to the *purging action* of the Section 504." (Emphasis added.) And thus he concluded that § 504 " * * * includes convictions obtained under the conspiracy statutes of the several states, upon proof the conspiracy was entered into to commit the crime of extortion or any of the other crimes referred to."[5]

4. While § 504 used the term "grand larceny," I find that the use of the term "grand" is to distinguish grand larceny from petit or petty larceny. By common law, if the property stolen exceeded a value of twelve pence, the offense was grand larceny and where the value was twelve pence or under, it was petit larceny, but both were felonies and were distinguishable by the punishment inflicted. (32 American Jurisprudence, § 3, p. 886, and 24 A.L.R. 1011.) For the purposes of this Opinion, the word "larceny" will hereafter be used as the equivalent of grand larceny, and certainly by the financial magnitude of the offenses involved, plaintiff's act would have been the equivalent of grand larceny—if the other prerequisites of the statute had been met. In its statute, Pennsylvania makes no distinction between grand larceny and larceny. 22 Pennsylvania Law Encyclopedia, Larceny, ¶ 1 at 204.

5. United States v. Priore, 236 F.Supp. 542, U.S.D.C., E.D.N.Y., June 12, 1964. No appeal was taken from Judge Mishler's ruling.

Thus, since in this civil action the statute should be interpreted liberally as a remedial statute, the ultimate issue in the instant matter is whether the Pennsylvania crime of conspiracy to cheat and defraud is within one of the prohibitions of either embezzlement and/or grand larceny of § 504. As to the definition and scope of these terms, we have been instructed that in construing § 504: "* * * *the laws of the states and of the United States should play conjoint and not disparate roles*. If the state law of parole is not so unlike the federal law as to render the reach of Section 504(a) so variable or so limited that the cleansing period intended by Congress would be impaired, state law might well be applied to construe the phrase referred to." *Serio v. Liss*, 300 F.2d 386, 390 (3rd Cir. 1961). (Emphasis added.)

## II

## PENNSYLVANIA LAW

Upon reviewing the very record on which plaintiff was convicted, the Pennsylvania Superior Court has held that: "It must be remembered that, while not on trial for the *substantive crime of larceny or stealing* of the union's funds, the record really reveals that the appellants could have been convicted of such crimes had criminal action been instituted within the period allowed by the statute of limitations." *Commonwealth v. Cohen, et al.*, 199 A.2d 139, at 156. (Emphasis added.)

More pointedly, after noting "* * * the cheating of pickets by paying them less than the stated sums, the devious purchase of clothing and insurance and the dissemination of numerous forged and fraudulent checks, * * * *" Judge Ullman concluded that "in blunt lay language they were clear examples of *stealing*." [6] (Emphasis added.) The authors of American Jurisprudence note: "*To steal is to commit larceny*. 'Stealing' is a taking without right or leave, with intent to keep wrongfully. The word 'steal' has a uniform signification when used in connection with personal property, and in common, as well as in legal, parlance means the felonious taking, carrying away of the personal goods of another." 32 American Jurisprudence, § 3, p. 886. (Emphasis added.)

Thus, the Pennsylvania law and the record on which plaintiff was convicted may be summarized as follows:

1. The State Courts have held that "the record really reveals" that plaintiff could have been convicted for the crime of "larceny or stealing of the Union's funds."

2. The trial court has described these acts of the conspiracy as "stealing".

3. For these acts of stealing, plaintiff was indicted for a conspiracy to cheat and defraud.

4. Therefore, should a conviction for these acts of stealing, pursuant to an indictment of cheating and defrauding, require a different result than a conviction for the similar acts of stealing where the indictment charged larceny?

One must readily recognize that there are technical differences in Pennsylvania law as to the definitions of larceny, and of cheating and defrauding. "Since the statute does not define larceny, the common-law definition applies. Larceny is the wrongful taking and carrying away of another's property without any claim of right, and with intent to convert it to a use other than the owner's without his consent." 22 Pennsylvania Law Encyclopedia, Larceny, Section 1 at p. 205.[7] In Pennsylvania, the offense of

---

6. Judge Ullman's Opinion, p. 65.

7. In his treatise on Criminal Law in Pennsylvania, Judge Theodore L. Reimel notes: "The offense of larceny is committed when goods are taken from one who has possession of such goods. It is not necessary that the possessor have actual ownership in the goods. A salesman in a store can be convicted of larceny for taking goods from the store

conspiracy to cheat and defraud is a statutory and common law offense. See 18 Purdons Pa. Statute Annotated § 4302. It has been stated that "Cheats affecting the public or a large number of individuals are punishable as common law crimes." Kessler, Criminal Procedure in Pennsylvania, 174; See also Tricket, Criminal Law in Pennsylvania, 596; Judge Ullman's Instructions to the Jury, Transcript 3626, 3631; and the cases cited in Judge Ullman's Opinion, pp. 105–107.

■ While aware of the technical differences under Pennsylvania law as to Larceny and a Conspiracy to Cheat and Defraud, I conclude that for the purposes of the Labor-Management Reporting Act, § 504, the state crime of conspiracy to cheat and defraud is the equivalent of grand larceny as used in § 504.[8] Such a construction seems particularly consistent with the Congressional intent where the cheating and defrauding which resulted in the illegal dissipation of union funds were among the acts which Congress intended to eliminate by the enactment of the Labor-Management Reporting Act of 1959.

### III

### FEDERAL LAW

In order to ascertain the scope of the term larceny in § 504,[9] this term must also be reviewed as to its federal usage. Serio v. Liss, 300 F.2d 386, 390. A review of the relevant federal statutes demonstrates that Congress has designated as crimes acts which were within the former common law classification of larceny, and in those instances, Congress has acted without using the nomenclature of "larceny" in the definition of the offense and without designating the legislation as a larceny statute. In addition,

Congress has designated gradations of offenses which, though substantially similar, are distinguishable from the classic common law contours of larceny; yet for both classes of offenses—the precise common law offense and the offense similar but distinguishable from the common law offense—the Federal Courts have referred indiscriminately to the applicable legislation as "larceny statutes."

Chapter 31 of 18 U.S.C.A., broadly labeled Embezzlement and Theft, provides, in § 641:

"§ 641. Public money, property or records

"Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

"Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both. * * * " [10]

Even though Congress did not use the term larceny, the Court of Appeals of the First Circuit held that in § 641 "The Congress [was] defin[ing] the crime of

---

since possession is in the owner of the store not the salesman. An offense is also committed when a person who is the owner of property is tricked by the defendant into giving up possession." pp. 184–185.

8. For the purposes of the Labor-Management Reporting Act, § 504 and this opinion, there is no distinction between a

conviction for a conspiracy to cheat and defraud and a conviction for cheating and defrauding. See Postma and Priore, supra.

9. Technically § 504 uses the term grand larceny. See footnote 3, supra.

10. See also ¶¶ 642 and 659 of 18 U.S. C.A.

larceny of government property." O'Malley v. United States, 227 F.2d 332, 336.

In Crabb v. Zerbst, 99 F.2d 562 (5th Cir. 1938) the Court interpreted the predecessor sections of § 641; these sections were similar to § 641 and also did not contain the term of larceny. The Court of Appeals held as follows:

" * * * it is doubtful if at common law any fixed definition or formula was not strained in its application to some of the cases clearly constituting the offense [of larceny]. Modern criminal codes treat the offense in various ways. Some define the offense by following the old cases and are merely declaratory of the common law, while others have *broadened the offense to include offenses previously known as embezzlement, false pretenses, and even felonious breaches of trust. * * ** The obvious purpose of this apparent merger is to avoid the pitfalls of pleading where a defendant might escape a conviction for one offense by proof that he had committed another. * * * [T]he modern tendency is to broaden the offense of larceny, by whatever name it may be called, to include such related offenses * * *.* Id. at 564. (Emphasis added.)

■ Plaintiff's contention can perhaps be best tested by the following hypothetical: Would a government employee who had been indicted and convicted, pursuant to § 641, for stealing thousands of dollars be subject to the prohibitions of § 504 in the Labor-Management Reporting and Disclosure Act? Plaintiff's answer necessarily would be "No" because the employee who had stolen the funds had not been indicted by a statute which was titled "Larceny" or which used the term larceny. Yet, the courts have held that § 641 is actually a statute defining "larceny of government property." O'Malley v. United States, Id., 227 F.2d at 336. I cannot assume that Congress

was unaware of the fact that numerous statutes such as § 641 have been held by the courts to be larceny statutes, and accordingly, I must conclude that Congress intended to cover a criminal offense, such as plaintiff's " * * * by whatever name it may be called." Crabb v. Zerbst, Id., 99 F.2d at 564.

Particularly in view of this Circuit's decision in Serio, supra, I find the argument of the Government more persuasive than plaintiff's. The Department of Justice and the Department of Labor argue, as *amicus curiae,* that:

"There is a clear indication on the face of the statute that the offenses in question are among those to which Congress was addressing itself. The very same title of which 504(a) is a part, Congress specifically made the same offense a crime under federal law, providing any person who embezzles, steals, or unlawfully and wilfully abstracts or converts to his own or the use of another any of the monies or other assets of a labor organization of which he is an officer or by which he is employed directly and indirectly shall be fined not more than $10,000 or imprisoned for not more than five years, or both. § 501(c).

"It seems inconceivable that Congress would think such [embezzlement or stealing-type] conduct as inimical to the purposes of the Act as to warrant specific prescriptions by criminal provision with serious penalties, and yet would tend to omit it from the disqualifying crimes of § 504(a)—which include some so indirectly related to the purpose of the Act as rape and burglary."

For all of the foregoing reasons, I find that plaintiff's request for a preliminary injunction must be denied and that plaintiff is not entitled to a declaratory judgment which would sanction placing his name on the ballot for the forthcoming election.[11]

11. I have carefully reviewed the other questions raised by plaintiff's counsel, but I find no relevant authority supporting these contentions for the type of relief requested.